IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALLEN KENT BARBER,

       Plaintiff,

v.                                       CIV 16-0280 KBM

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social
Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 15*) filed on November 2, 2016. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 5, 8, 9.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be **DENIED**.

**I.   Procedural History**

On November 6, 2012, Mr. Allen Kent Barber (Plaintiff) protectively filed applications with the Social Security Administration for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social

---

[1]  Effective January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is therefore substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

Security Act. Administrative Record[2] (AR) at 211-24, 239. Plaintiff alleged a disability onset date of April 29, 2011.[3] AR at 15, 279. Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 70-87) and on reconsideration (AR at 88-116). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of his SSI application. AR at 133-34.

Plaintiff appeared pro se and testified at the *de novo* hearing. *See* AR at 15, 37-56. ALJ Christopher H. Juge issued an unfavorable decision on August 6, 2014. AR at 12-35. Plaintiff requested that the Appeals Council review the ALJ's decision (AR at 10); the Appeals Council denied the request for review on February 11, 2016 (AR 1-5). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.   Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

---

[2]  Documents 12-1 through 12-20 comprise the sealed Administrative Record. *See Doc. 12*. The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

[3]  Originally, Plaintiff alleged an onset date of June 15, 2010 (*see* AR at 211, 218) but modified the date to April 29, 2011, because he received wages for substantial gainful activity after his alleged onset date (*see* AR at 279, 319).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[4] ALJ Juge found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 29, 2011. AR at 17 (citing 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairment[s]: large Hill-Sachs lesion and labral tear of the left shoulder status post arthroscopic Bankart repair, and degenerative disc

---

[4]  ALJ Juge first found that Plaintiff's "earning records shows that [he] has acquired sufficient quarters of coverage to remain insured through December 31, 2014." AR at 15, 17.

disease . . . ." AR at 18 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ discussed Plaintiff's history of anxiety, depression, and the psychiatric treatment he received from various providers and found that any "medically determinable mental impairments cause[d] no more than [a] 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area . . . ." AR at 18-21. Consequently, the ALJ determined Plaintiff's mental impairments are non-severe. AR at 21 (citing 202 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)).

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 . . . ." AR at 21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the ALJ found that while Plaintiff "has severe impairments that could reasonably be expected to produce some of the symptoms he alleges and which would affect his ability to perform work related activities[,]" the ALJ did not find Plaintiff's "allegations that he is incapable of all work activity to be credible." AR at 25. The ALJ considered the evidence of record, including a thoughtful and well-reasoned discussion of the treatment notes and impressions of Dr. Paul Mattox (treating psychiatrist) and the examination and Mental RFC Assessment performed by Dr. John Koewler (consultative psychologist), as well as the treatment notes and Physical RFC Assessment of Plaintiff's treating physician, Dr. Carletta Thompson, along with records and evaluations from other medical providers. AR at 18–27. Ultimately, the ALJ found that Plaintiff "has

the residual functional capacity to perform the full range of light work . . . ." AR at 21 (citing 20 C.F.R. §§ 404.1567(b) and 416.967(b)).

ALJ Juge found that Plaintiff is unable to perform his past relevant work as an automobile mechanic. AR at 28. The ALJ considered Plaintiff's "age, education, work experience, and residual functional capacity," and upon application of the Medical-Vocational Guidelines (colloquially known as the "Grids"), found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform . . . ." AR at 28 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)). The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 29, 2011, through the date of the [ALJ's] decision . . . ." AR at 28 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

## III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It 'requires more than a scintilla, but less than a preponderance.'" *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the

specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotations omitted)).

## IV.   Discussion

Plaintiff asserts that the ALJ: (1) improperly rejected the medical opinion of treating physician Carletta Thompson, M.D., and (2) ignored findings from Administrative Examining Psychologist John Koewler, Ph.D. and Non-Examining State Agency Medical Consultant, Renate Wewerka, Ph.D. *Doc. 15* at 15-25.

### A.   Treating Physician Carletta Thompson, M.D.

Plaintiff first argues that the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Carletta Thompson. *Doc. 15* at 15-21. Specifically, Plaintiff argues first that ALJ Juge did not perform the two-step treating physician analysis as required by law, and second that the ALJ's reasoning for rejecting Dr. Thompson's opinion is conclusory and fails to reference the portions of the record with which the ALJ found the opinion was inconsistent. *Doc. 15* at 17.

### 1.   ALJs must follow a two-step inquiry when evaluating a treating physician's opinion.

An ALJ must consider all medical opinions found in the record. *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R. §§ 404.1527(b), 416.927(b)). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about" a plaintiff's impairments. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An opinion from a treating physician is generally entitled to more weight than either an examining or an agency physician. *Padilla*, 2015 WL 10383109, at *4 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (internal citations omitted)).

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Id.* (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (internal citations omitted)). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762 (internal quotation omitted)).

Where the "treating physician's opinion is not supported by medical evidence or consistent with the record," *id.* (citation omitted), it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927."

*Robinson*, 366 F.3d at 1082 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Soc. Sec. Ruling, SSR 96-2p, Policy Interpretation Ruling Titles II & XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *4 (July 2, 1996))). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quoting *Watkins*, 350 F.3d at 1300 (internal quotations omitted)). "When evaluating any medical opinion in the record, the ALJ must give good reasons – reasons that are 'sufficiently specific to make clear to any subsequent reviewers' – for the weight that he ultimately assigns to" those opinions. *Padilla*, 2015 WL 10383109, at *4 (quoting *Langley*, 373 F.3d at 1119 (internal quotations omitted)). The ALJ's "determination, like all of his findings, must be supported by substantial evidence." *Id.*

### 2.    The ALJ's analysis sufficiently follows the treating physician rule and does not provide a basis for remand.

Dr. Thompson, a licensed medical doctor, is an acceptable medical source under the regulations. 20 C.F.R. § 404.1513(a)(1). "As explained above, the ALJ must follow two steps if he wishes to accord a treating physician's opinion less than 'controlling weight.'" *Padilla*, 2015 WL 10383109, at *5. "First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record." *Id.* If the opinion is not well-supported by the medical evidence or if it is "inconsistent with other substantial evidence in the record[,]" the ALJ will not give the

opinion controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). At the second step of the analysis of a treating physician's opinion, the ALJ "must determine what deference he will accord the opinion after considering the six deference factors listed above, and state sufficiently specific reasons for that determination." *Padilla*, 2015 WL 10383109, at *5; *see also* 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff's primary contention is that the ALJ erred by collapsing the two steps of the "inquiry into a single point, contrary to law." *Doc. 15* at 17 (citing *Chrismon v. Colvin*, 531 F. App'x 893, 901 (10th Cir. 2013)). Plaintiff cites *Krauser* to support the proposition that the ALJ must "reference those portions of the record that are allegedly inconsistent with the treating source's opinion." *Doc. 15* at 17 (quoting 638 F.3d at 1331 (internal quotation marks and quotation omitted)); *Doc. 22* at 3. Unlike in *Krauser*, however, where the ALJ found the treating physician's opinion was not entitled to controlling weight and then "simply stopped[,]" 638 F.3d at 1330, ALJ Juge did explain his decision. While the Court agrees that the ALJ did not provide an ideal model of what an analysis under the treating physician rule should look like, his decision was sufficiently clear that the Court can determine why he chose not to give Dr. Thompson's opinion controlling weight. In other words, the Court is "not troubled by the substance of the ALJ's determination." *Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009); *see also Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (finding that "[b]ecause [the court] can tell from the decision that the ALJ declined to give controlling weight to [the

physician's] opinion, [the court did] not reverse on" the ground that "the ALJ did not expressly state whether he had given [the physician's] opinion 'controlling weight'").

At the first step, ALJ Juge concluded that "the medical statement by Dr. Thompson dated March 5, 2014, in which she stated [Plaintiff's] lumbar degenerative disc disease caused moderate pain and" determined specific limitations, was "inconsistent with the examination findings of Dr. Lucas[,]" another treating physician, "not supported by her own examination notes[,]" "not supported by the objective evidence or abnormal clinical findings as discussed" previously in the ALJ's opinion, and "not consistent with the record as a whole . . . ." AR at 27 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c), SSR 96-2p). The ALJ also found that Dr. Thompson "provided little relevant evidence in the form of medical signs and findings to support her opinion of extreme restrictions . . . ." AR at 27.

Plaintiff first contends that the ALJ's findings are conclusory and do not reference the record. *Doc. 15* at 17. The Court notes, however, that in the portion of the ALJ's opinion immediately preceding these conclusions, the ALJ painstakingly detailed those records relevant to Dr. Thompson and Dr. Lucas, as well as the other record evidence regarding Plaintiff's physical impairments. AR at 22-27. As the Court discusses below, the ALJ's conclusions are well-supported by other portions of his opinion and the evidence of record.

Plaintiff argues the ALJ incorrectly concluded that Dr. Thompson's opinion was inconsistent with Dr. Lucas's examination findings. *Doc. 15* at 20-21. Plaintiff notes Dr. Lucas's findings that Plaintiff has "a slight narrowing across the acromioclavicular joint[,]" "a 6% impairment for some slight subluxation[,]" "a large Hill-Sachs lesion . . .

consistent with [acute trauma and some findings of instability,]" "stiffness to his shoulder with some slight popping and clicking[,]" and his conclusions that Plaintiff has an "8% upper extremity impairment, due to his pain and discomfort, with a 5% whole person impairment." *Doc. 15* at 20 (quoting AR at 399, 400). Plaintiff maintains that Dr. Lucas's findings are consistent with Dr. Thompson's opinion. *Doc. 15* at 20. Plaintiff fails to demonstrate, however, exactly *how* Dr. Lucas's findings are consistent with Dr. Thompson's very extreme restrictions. As the Commissioner points out, Dr. Lucas noted that the click and pop in Plaintiff's shoulder was mild, there were no "signs of gross dislocation or subluxation[,]" Plaintiff retained overall shoulder strength of "4+/5 on supraspinatus testing" and "5/5 on infraspinatus and subscapularis testing." *Doc. 19* at 11 (citing AR at 399). Dr. Lucas further noted that Plaintiff "has a negative impingement and Hawkins impingement[5][,] . . . is nontender to palpation across the acromioclavicular joint[,]" his "elbow and wrist have a full range of motion[,]" and his "left shoulder [has] good alignment of the glenohumeral joint without any signs of sclerosis or bone spur formation." *Doc. 19* at 11 (quoting AR at 399). The Court finds that the ALJ's conclusion that Dr. Thompson's restrictive opinion was inconsistent with Dr. Lucas's findings is well-supported.

The Court further finds that ALJ Juge was entitled to give Dr. Thompson's March 5, 2014 medical statement less than controlling weight, and that the ALJ's analysis at Step One of the inquiry was sufficient. *See Andersen*, 319 F. App'x at 721 (citation omitted).

---

[5] A positive Hawkins impingement provides objective evidence to help diagnose a supraspinatus tendon tear. *See* The accuracy of "subacromial grind test" in diagnosis of supraspinatus rotator cuff tears, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4410470/ (last visited March 20, 2017).

The Tenth Circuit has "held that it is not necessary for the ALJ to address each factor expressly or at length" at the second step of the inquiry, provided that the ALJ offers "'good reasons in his decision for the weight he gave to the'" medical opinion. *Mounts v. Astrue*, 479 F. App'x 860, 866-67 (10th Cir. 2012) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal citation omitted)). "What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[ ] the weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Id.* (quoting *Oldham*, 509 F.3d at 1258 (internal quotation omitted)). Here, ALJ Juge did not address the six deference factors expressly, but he did provide sufficiently specific reasoning for his decision that the Court can understand why he assigned Dr. Thompson's opinion limited weight.

First, the ALJ noted Plaintiff's three visits with Dr. Thompson in May, July, and October 2013. AR at 24-25 (citing 514-18, 528-33, 537-42); *see also* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("Length of the treatment relationship and the frequency of examination").

Second, the ALJ thoroughly summarized those three visits. AR at 24-25. Dr. Thompson evaluated Plaintiff for pain management for left shoulder and low back pain. AR at 24 (citing AR at 537). At the initial visit in May 2013, Plaintiff reported "left arm fatigue, numbness and tingling in the hand, that he sloped to the left, achy and occasionally sharp low back pain, leg fatigue, and restlessness at night." AR at 24, 537. The ALJ noted that Dr. Thompson examined old MRIs and performed a physical examination, finding "a normal heel-toe gait pattern, taut rhomboids on the left, a negative [Spurling] maneuver (for cervical nerve root pain), taut/tender lower lumbar

paraspinals bilaterally, a positive straight leg raise test on the left for back pain only, a stable left shoulder with left infrascapular tenderness, tenderness at the end range of abduction and forward flexion, and a negative arm drop test (for tear in the supraspinatus tendon)." AR at 24, 540-41. "Dr. Thompson diagnosed chronic left shoulder pain, lumbar degenerative disc disease, and back pain and prescribed Ultram 50 mg three times a day, Gabapentin 300 mg three times a day, and physical therapy." AR at 24-25, 541-42.

Plaintiff showed improvement at the two follow-up visits. The ALJ summarized Dr. Thompson's treatment notes from July 2013, noting that Plaintiff "reported improvement with physical therapy and Gabapentin but more pain all over" and at night, had "taut bands in the rhomboid on the left, few tender paraspinals in the lower lumbar region, tenderness of the left acromion-clavicular joint, and improved left shoulder forward flexion and internal rotation." AR at 25, 528, 531. Dr. Thompson changed Plaintiff's prescriptions to "Hydrocodone 5/325 mg four times a day as needed and Gabapentin 400 mg four times a day," along with continued physical therapy. AR at 25, 532. The ALJ noted from the October 2013 treatment notes that Plaintiff had "completed physical therapy, his appetite was improved, he had stiffness in his low back and shoulders, occasional sharp pain, and decreased tingling with Gabapentin 100 mg at night." AR at 25, 514 (citing AR at 514-18).  Dr. Thompson's "physical examination showed improved left shoulder range of motion, normal heel-toe gait pattern, tender paraspinals in the lower lumbar region, and a positive straight leg raise test on the left for back pain only." AR at 25, 517-18. Dr. Thompson continued the same Hydrocodone and Gabapentin prescriptions and advised Plaintiff to perform home exercises. AR at

25, 518. The ALJ also noted that Plaintiff is still taking Hydrocodone (more frequently than prescribed) and Gabapentin (less frequently than prescribed). AR at 26; *see also* AR at 502-13, 519-27, 534 (reflecting regular prescription refills authorized by Dr. Thompson); 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) ("Nature and extent of the treatment relationship").

Third, the ALJ found that Dr. Thompson "provided little relevant evidence in the form of medical signs and findings to support her opinion of extreme restrictions[,]" and her opinions are "not supported by her own examination notes . . . ." *See* AR at 27. Thus, the ALJ's discussion demonstrates that Dr. Thompson did not support her opinion with relevant evidence. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion."). For example, the ALJ noted from Dr. Thompson's examination notes that Plaintiff had "improved left shoulder range of motion, normal heel-toe gait pattern, tender paraspinals in the lower lumbar region, and a positive straight leg raise test on the left for back pain only." AR at 26; *see also* AR at 517-18. Based on these improvements and other evidence from the record, the ALJ found that Dr. Thompson's restrictions are not supported by her own examination notes and Plaintiff "is able to perform a full range of light exertional work." AR at 26–27. Plaintiff disagrees, noting Dr. Thompson examined two MRIs that revealed degenerative disc disease. *See Doc. 22* at 3-4. While the evidence could possibly be construed to support Plaintiff's conclusion, there is substantial evidence to support the ALJ's ultimate decision, and the Court will

not displace that decision simply because there are two conflicting views. *See Lax*, 489 F.3d at 1084 (quotation omitted).

It is also clear that ALJ Juge implicitly considered the fourth deference factor regarding consistency between Dr. Thompson's opinion and the record evidence. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."). For example, while Dr. Thompson advocated for restrictive work limitations, there is evidence that Plaintiff worked up to full-time hours at one point before he showed improvement from his 2013 physical therapy sessions. *See*, *e.g.*, AR at 26, 232 (showing earnings in 2011 from Plaintiff's employment at Jayco Customs), 379 (noting at an October 13, 2010 appointment that Plaintiff was "tolerating work related activities satisfactorily"), 380 (noting at an October 1, 2010 appointment that Plaintiff was continuing "to increase his work related activity on a week to week basis"). It would seem, therefore, that Dr. Thompson's opinion is inconsistent with relevant record evidence, since Plaintiff did have sufficient ability to function appropriately at work. *See* 20 C.F.R. §§ 401.1527(c)(4), 416.927(c)(4). Moreover, as discussed previously in this section, there is sufficient discussion in the ALJ's opinion to demonstrate that Dr. Thompson's opinion is inconsistent with Dr. Lucas's opinion.

Finally, the ALJ noted that Plaintiff saw Dr. Thompson specifically for pain management. AR at 26. *See* 20 C.F.R. §§ 401.1527(c)(5), 416.927(c)(5) ("Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Ultimately, the Court finds the ALJ gave "good reasons" for his decision to give Dr. Thompson's medical opinions "little weight." *See Mounts*, 479 F. App'x at 866-67 (quotation omitted). The Court further finds that substantial evidence in the record supports the ALJ's findings.[6] *See Lax*, 489 F.3d at 1084 (citation omitted).

### B.   Administrative Examining Psychologist John Koewler, Ph. D. and Non-Examining State Agency Consultant, Renate Wewerka, Ph.D.

Plaintiff argues that ALJ Juge ignored findings from Dr. Koewler and Dr. Wewerka. *Doc. 15* at 21-25. Plaintiff makes several specific arguments regarding the ALJ's analysis of these two opinions. First, Plaintiff contends that "ALJ Juge's RFC did not include any limitations stemming from Mr. Barber's mental impairments." *Doc. 15* at 21. Second, it appears Plaintiff disagrees with the ALJ's reasoning for discounting the two opinions. *Doc. 15* at 21-24. Third, Plaintiff asserts that "[e]ven if it had been permissible to reject these medical opinions, ALJ Fuge [sic] was left with no medical opinions on which to base his ultimate findings regarding [Plaintiff's] mental impairments and its [sic] impact on his RFC." *Doc. 15* at 24. Finally, Plaintiff argues that the ALJ's reliance on the Medical-Vocational Guidelines was inappropriate without expert vocational testimony, because Plaintiff "has nonexertional limitations that prevent him from performing a substantial majority of the jobs within a particular exertional category . . . ." *Doc. 15* at 24.

---

[6] Plaintiff mentions a December 16, 2014 Medical Assessment of Ability to Do Work-Related Activities submitted by Dr. Thompson after the ALJ's decision and considered by the Appeals Council. *See Doc. 15* at 19-20. The Appeals Council did not make explicit findings about the new evidence, nor was it required to. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006). The Court finds nothing in Dr. Thompson's 2014 findings that change the Court's analysis.

**1.    The ALJ adequately considered Plaintiff's mental limitations in formulating the RFC.**

Plaintiff argues the ALJ failed to consider Plaintiff's mental impairments when determining the RFC. *Doc. 15* at 21. The Court disagrees. As the Court noted previously, the ALJ's analysis of Plaintiff's mental impairments at Step Two was well-reasoned and more than adequate. He summarized Plaintiff's history of mental health treatment, including the fact that he sought psychiatric treatment with Dr. Sadziene-Bessinger for opiate abuse issues, not for PTSD, anxiety, or depression. AR at 18. Dr. Sadziene-Bessinger's notes "reflect diagnoses of opiate dependence, depressive disorder, and anxiety disorder, with a current Global Assessment of Functioning of 58, which indicated moderate symptoms, or moderate difficulty in one of [either] social, occupational, or school functioning," as well as "a Global Assessment of Functioning of 68 in the past year, which indicated mild symptoms" or difficulty in one of the aforementioned areas of functioning. AR at 18 (citing AR at 441-46). The ALJ noted that Plaintiff "stopped seeing Dr. Sadziene-Bessinger after six months and stopped the medication" she had prescribed. AR at 18 (citing AR at 543).

The ALJ gave a comprehensive summary of Dr. Koewler's psychological consultative evaluation. AR at 19. ALJ Juge then detailed Plaintiff's self-referred visits with Dr. Paul Mattox, Ph.D., who saw Plaintiff two times "for 'mental stuff' and his disability claim." AR at 19; *see also* AR at 543-47. In finding that Plaintiff's mental impairments are non-severe, the ALJ found it notable that Plaintiff first sought treatment for opiate dependence, "ceased recommended treatment with medication and medication management after approximately seven months and did not pursue

additional treatment until February 2014, just months before his disability hearing on appeal[,]" clearly wanted Dr. Mattox "to comment on his candidacy for disability[,]" and "elaborated or exaggerated his complaints on subsequent evaluations." AR at 20. The ALJ observed that Plaintiff indicated on his "self-prepared function report . . . that his limited abilities were the result of physical impairments and pain rather than mental impairments." AR at 20 (citing AR at 281-88). The ALJ used the Agency's special technique to find that Plaintiff has "no more than mild limitations in activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation, each of extended duration." AR at 20; *see also* 20 C.F.R. § 404.1520a. Accordingly, the ALJ found Plaintiff's mental limitations are non-severe. AR at 21 (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)).

The ALJ next assessed Plaintiff's RFC. AR at 21-27. ALJs are required to make "an independent step-four assessment of mental impairments found medically determinable but non-severe at step two." *See Suttles v. Colvin*, 543 F. App'x 824, 825 (10th Cir. 2013) (citing *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013)). The issue – "how much further discussion of a non-severe impairment is required at step four?" – is one "frequently encountered in social security disability appeals . . . ." *Wells*, 727 F.3d at 1064. Plaintiff believes that the ALJ failed to consider the opinions of Dr. Koewler and Dr. Wewerka in assessing the RFC (*see Doc. 15* at 21-22), but the Court finds that the ALJ's reference to his discussion in the previous step is sufficient evidence that he considered the evidence from Dr. Koewler, Dr. Wewerka, Dr. Mattox, and Dr. Sadziene-Bessinger in making the RFC determination. *See* AR at 27.

18

As in *Suttles*, ALJ Juge found Plaintiff's mental impairments non-severe at Step Two and "recognized that a distinct mental RFC assessment was still required at step four . . . ." 543 F. App'x at 826; *see also* AR at 21 (noting that the mental RFC assessment at Steps 4 and 5 "requires a more detailed assessment"). At Step Four, ALJ Juge specifically discussed the opinion of Dr. Wewerka, the non-examining State medical consultant, and concluded by finding that Plaintiff's "mental impairments are non-severe as discussed in finding 3 . . . ." AR at 27 (citing AR at 63-64, 108-09). While the ALJ's Step Four analysis could have been more detailed, there is sufficient evidence (in addition to his analysis of Dr. Wewerka's non-examining opinion) that the ALJ specifically considered the limitations of Plaintiff's mental impairments: he stated that he had considered all symptoms, objective medical evidence, other evidence, and opinion evidence as required by the regulations; he noted Plaintiff's Prozac prescription "prescribed by a psychiatrist, for posttraumatic stress disorder (PTSD) and depression"; he mentioned that Plaintiff "is on a waiting list for counseling therapy" and reported "he had difficulty being around people due to symptoms from PTSD"; and he assessed Plaintiff's credibility. AR at 22, 26. Finally, the ALJ explicitly tied his "former discussion to [his] latter conclusion." *See* AR at 27 (finding that Plaintiff's "mental impairments are non-severe as discussed in findings 3"); *see also Suttles*, 543 F. App'x at 826. Plaintiff points to no evidence to support a finding of "an improper conflation of the step-two and step-four assessments." *Suttles*, 543 F. App'x at 826 (citation omitted). The Court will deny Plaintiff's motion as to this issue.

**2.     The ALJ provided sufficient reasons for discounting the two opinions.**

Plaintiff next disagrees with the ALJ's decision to discount the opinions of Dr. Koewler and Dr. Wewerka. *Doc. 15* at 21-24. The ALJ gave little weight to Dr. Koewler's opinions "as they are not consistent with his own evaluation or with other mental health evaluations" (i.e., those of Dr. Mattox and Dr. Sadziene-Bessinger) as the ALJ discussed earlier in his decision. AR at 27; *see also* AR at 18-21. After summarizing Dr. Wewerka's findings, which are largely based on Dr. Koewler's opinion (*see* AR at 65, 110), the ALJ found that Plaintiff's "mental impairments are non-severe as discussed in finding 3 and accord[ed] little weight to" Dr. Wewerka's opinion. *AR* at 27.

Because there was no treating physician opinion submitted, the ALJ "must address all of the medical opinions, using the same six factors used to analyze treating physician's opinions." *See Harbin v. Colvin*, No. 13-CV-136-TLW, 2014 WL 2738483, at *5 (N.D. Okla. June 17, 2014) (citing 20 C.F.R. §§ 416.927(c) and (e) (section (c) provides that "[u]nless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.")). Again, the ALJ's analysis would not provide the gold standard for the inquiry, but the decision was sufficiently adequate for the Court to understand the reasoning behind giving Dr. Koewler's and Dr. Wewerka's opinions little weight.

First, the ALJ noted that Dr. Koewler saw Plaintiff one time for a consultative examination, and Dr. Wewerka did not see Plaintiff at all as the non-examining State medical consultant.  *See* AR at 19, 27 (citing AR at 63-67, 108-12, 477-81); *see also* 20

C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("Length of the treatment relationship and
the frequency of examination").

Second, the ALJ thoroughly summarized Plaintiff's April 25, 2013 consultative
evaluation with Dr. Koewler (there was no relationship with Dr. Wewerka to summarize).
AR at 19-21 (citing AR at 478-81); *see also* 20 C.F.R. §§ 404.1527(c)(2)(ii),
416.927(c)(2)(ii) ("Nature and extent of the treatment relationship"). The ALJ noted that
Plaintiff "complained of depression related to his inability to work," anxiety and feeling
overwhelmed from financial stress, an "impending eviction, and an ongoing custody
fight over his older child." AR at 19, 478. Plaintiff "reported a bad childhood and sexual
abuse at age 6, a bad marriage, a hospitalization at age 20 for suicidal ideation, and
recent treatment with a psychiatrist for opioid addiction." AR at 19, 479. Plaintiff "stated
he was able to avoid bad memories from his childhood and denied flashbacks and
nightmares[,]" but "he slept poorly at night and took daytime naps" and "reported poor
concentration." AR at 19, 479. Finally, Plaintiff reported "that he spent his time sitting at
home and he did not feel like seeing his few friends." AR at 19, 479.

The ALJ then detailed Dr. Koewler's findings on the mental status examination:
Plaintiff exhibited pressured speech; "was overly talkative and circumstantial but . . .
could provide basic information with frequent redirection"; had no apparent psychotic
thought disorder, an intense affect and anxious/depressed mood, and a strong somatic
focus; and was open and cooperative. AR at 19, 480. Plaintiff "had immediate and
delayed recall of 3/3 items[,]" "could remember seven digits forward and four backward"
(within normal limits), "made errors computing serial 7's, but could compute serial 3's[,]"
"could compute simple arithmetic" (he made mistakes but corrected them), had below

21

average knowledge of general information (but was not severely impaired), gave responses to hypothetical problems that indicated he had "adequate common sense reasoning ability for basic independent functioning[,]" and "could interpret simple proverbs." AR at 19, 480. "Dr. Koewler noted adequate insight but stated judgment could be impaired at times" and concluded that Plaintiff had "low average to average intelligence." AR at 19, 480. The ALJ noted Dr. Koewler's opinion that Plaintiff "had chronic severe anxiety and a moderate degree of depression related to a dysfunctional family background and ongoing stress and were exacerbated by current health problems[,]" and "Dr. Koewler diagnosed major depression, possible bipolar disorder, anxiety disorder not otherwise specified with panic and posttraumatic features, pain disorder, insomnia, and opiate dependency in full remission." AR at 19, 480-81.

The ALJ described the limitations Dr. Koewler opined: that Plaintiff's "ability to understand and remember very short and simple instructions and detailed or complex instructions was moderately limited; his ability to carry out instructions was markedly limited; his ability to attend and concentrate was moderately limited; his ability to work without supervision was moderately limited; interaction with public, co-workers, and supervisors was moderately limited; his ability to adapt to changes in the workplace was moderately limited; and, use of public transportation could be moderately limited." AR at 19, 480.

Third, the ALJ found that Dr. Koewler's opinion was "not consistent with his own evaluation[,]" which decreases its supportability. AR at 27; *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory

findings, the more weight [the ALJ] will give that opinion."). The Secretary asserts that

"Dr. Koewler's exam findings were disproportionate to the moderate and even marked

limitations he endorsed . . . ." *See Doc. 19* at 17. It appears to the Court that the ALJ

implicitly considered this, because he repeated several of Dr. Koewler's findings later in

his opinion when discussing his conclusion that Plaintiff's mental impairments are non-

severe. *See* AR at 21. ALJ Juge found it noteworthy that Dr. Koewler remarked Plaintiff

"was open and cooperative," "exhibited good immediate and delayed recall," "was able

to concentrate [and] exhibited adequate common sense reasoning ability for basic

independent functioning," "was able to interpret simple proverbs," and "seemed to have

adequate insight but judgment could be impaired at times." AR at 21 (citing AR at 480).

The Court agrees that these observations by Dr. Koewler could be construed as

inconsistent with his later restrictive conclusions. *See* AR at 480.

   The ALJ made it clearer that he considered the fourth factor – consistency

between the opinions and the record evidence. *See* 20 C.F.R. §§ 404.1527(c)(4),

416.927(c)(4) ("Consistency. Generally, the more consistent an opinion is with the

record as a whole, the more weight [the ALJ] will give to that opinion."). ALJ Juge wrote

at length about the inconsistencies between examination notes of Dr. Koewler and Dr.

Mattox due to Plaintiff's elaborations and exaggerations from one exam to the next. AR

at 20. The ALJ noted Dr. Mattox's observation that Plaintiff "clearly wanted him to

comment on his candidacy for disability." AR at 20. Plaintiff reported "hospitalization at

age 20 for suicidal ideation to Dr. Koewler[,]" and changed the story to "attempted

suicide at age 18 or 19 to Dr. Mattox . . . ." AR at 20. He revised from a report to Dr.

Koewler of "sexual molestation at age 6 . . . to sexual molestation by two men on the

same night at age 6 to Dr. Mattox . . . ." AR at 20. Finally, Plaintiff changed his "report of not trusting people to Dr. Koewler to reports of paranoia regarding fears that people would poison his drinks and extreme measures of setting up surveillance cameras throughout his property to Dr. Mattox." AR at 20.

The ALJ's decision also implicitly considers the inconsistencies between Dr. Wewerka's review and the record evidence. Dr. Wewerka's review of the record on reconsideration is dated April 30, 2013. See AR at 112. The Court finds it significant that Dr. Wewerka was able to review Dr. Sadziene-Bessinger's notes and Dr. Koewler's evaluation, but she did not have the benefit of Dr. Mattox's 2014 treatment notes, nor could she see the inconsistencies and exaggerations the ALJ found important. Because Dr. Wewerka largely based her findings on Dr. Koewler's Mental RFC, the ALJ's reasoning for giving Dr. Koewler's findings "little weight" also applies to Dr. Wewerka's findings.

Unrelated to these inconsistencies, the ALJ also found it notable that Plaintiff indicated in a self-prepared function report "that his limited abilities were the result of physical impairments and pain rather than mental impairments." AR at 20 (citing AR at 280–88). Plaintiff described his abilities to "care for his three children and pets with some assistance from his girlfriend, perform daily personal care, occasionally prepare meals, perform light household chores, drive a car, go out alone, shop in stores, handle money, watch television, spend time with his children, spend time with others once a week, lift 40 pounds, follow spoken and written instructions, pay attention, get along with others, handle stress and changes in routine, and he needed no reminders to take medication or care for personal grooming." AR at 20-21 (citing AR at 280-88). The Court

24

agrees that these self-reported abilities could be construed as inconsistent with Dr. Koewler's and Dr. Wewerka's restrictive limitations.

Finally, there is evidence the ALJ implicitly considered the sixth deference factor in his discussion of Plaintiff's failure to report or disclose certain facts. *See* AR at 26; *see also* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) ("Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion."). In assessing Plaintiff's RFC, the ALJ found it noteworthy that Plaintiff failed to disclose his relevant post-injury work history or report his left shoulder re-injury while driving an all-terrain vehicle. AR at 26. The ALJ also mentioned Plaintiff's "history of opioid abuse/dependence, his current abuse of prescription narcotics (taking 5 a day instead of the prescribed 4 a day), . . . and his hearing testimony that he completed the 9th grade when in fact he reportedly obtained a GED . . . ." AR at 26 (citing AR at 479). The fact that Plaintiff was employed after his injury detracts from the restrictive medical opinions regarding Plaintiff's alleged marked and moderate mental limitations. Further, Plaintiff's questionable credibility, along with Dr. Mattox's observation that Plaintiff "clearly wanted him to comment about him being a candidate for disability" and that he should "rule out malingering[,]" detract from Plaintiff's self-reported limitations to Dr. Koewler that contributed to Dr. Koewler's (and Dr. Wewerka's) restrictive limitations. *See* AR at 20, 26, 544.

Plaintiff offers little record evidence and no authority to establish that the weight the ALJ assigned to either opinion was incorrect. *Doc. 15* at 22-23. Plaintiff states that Dr. Koewler found Plaintiff "had low to average intelligence, . . . chronic severe anxiety,

and a moderate degree of depression related to a dysfunctional family background and ongoing stress and were [sic] exacerbated by current health problems. *Doc. 15* at 22 (citing AR at 480). Plaintiff contends that these findings provide a basis for Dr. Koewler's restrictive limitations. *Doc. 15* at 23 (citing AR at 480).

Plaintiff further contends the ALJ ignored the opinion of State agency psychologist Dr. Wewerka. *Doc. 15* at 21. Plaintiff argues that Dr. Wewerka's opinion supports a finding that Plaintiff's "ability to perform is presumptively impaired." *Doc. 15* at 21-24. Plaintiff fails to develop this argument, however, and ignores the ALJ's discussion of Dr. Wewerka's findings. *Doc. 15* at 21-24; *see also* AR at 27.

While the issue may be a close one, the Court ultimately finds that the ALJ gave sufficient reasons for his decision to give Dr. Koewler's and Dr. Wewerka's opinions little weight, and that substantial evidence supports the ALJ's conclusions regarding those opinions. *See Lax*, 489 F.3d at 1084. As is required, "a reasonable mind might accept" the relevant evidence to support the ALJ's determination. *See id.* (quotations omitted)). Even if Plaintiff's argument is to be accepted and the record evidence could be construed to also have supported contrary findings, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quotation omitted). Accordingly, the Court will deny Plaintiff's motion with respect to this issue.

### 3.    The ALJ relied on other record evidence to make his ultimate findings regarding Plaintiff's mental impairments.

Third, Plaintiff asserts that "[e]ven if it had been permissible to reject these medical opinions, ALJ Fuge [sic] was left with no medical opinions on which to base his ultimate findings regarding [Plaintiff's] mental impairments and its [sic] impact on his RFC." *Doc. 15* at 24. While Plaintiff's assertion is factually correct, as there is no Medical Source Statement or other mental health evaluation prepared by a medical source other than Dr. Koewler or Dr. Wewerka, the ALJ did have other medical evidence in the record to rely on in making his findings: the treatment notes from Plaintiff's treating physicians, Dr. Mattox and Dr. Sadziene-Bessinger. *See* AR at 438-46, 543-47.

Plaintiff cites no authority for the proposition that an ALJ is required to obtain another consultative evaluation if he gives little weight to the one previously ordered, nor can the Court find any such authority. Rather, the Court notes that "the burden to prove disability in a social security case is on the claimant[,]" and "the Secretary has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1164, 1166 (10th Cir. 1997) (citing *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991) (internal citation omitted); *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)).

The regulations provide that "[i]f we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination." 20 C.F.R. § 404.1519(a). In *Hawkins*, the Tenth Circuit considered the issue of whether the ALJ erred in failing to order a consultative examination at all. 113 F.3d at 1166. The *Hawkins* court observed, "it is clear that, where there is a direct conflict in the medical evidence requiring resolution, *see* 20 C.F.R. § 404.1519a(b)(4), or where the medical

27

evidence in the record is inconclusive, *see Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993), a consultative examination is often required for proper resolution of a disability claim." *Id.*; *see also* Standards for Consultative Examinations and Existing Medical Evidence, 56 Fed. Reg. 36932-01, 1991 WL 142361, at *36932 (Aug. 1, 1991) (noting that "[w]hen the evidence in the individual's case file is insufficient for making a disability decision, a consultative examination is purchased, at Government expense, from the treating source whenever possible"). It is also clear that "[i]f evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available." *Robinson*, 366 F.3d at 1084 (citations omitted); *see also* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). Plaintiff does not argue that the remaining record evidence from Plaintiff's treating physicians was inconclusive, insufficient, inadequate, or conflicting. *See Docs. 15*, *22*. Here, the ALJ had sufficient medical evidence in the record to consider, and it is clear to the Court that the ALJ relied on the treatment notes of both Dr. Sadziene-Bessinger and Dr. Mattox. AR at 18-20 (detailing evidence of record from Dr. Sadziene-Bessinger and Dr. Mattox), 22 (asserting that the ALJ considered the opinion evidence). *See also* 20 C.F.R. § 404.1512. The Court will deny Plaintiff's motion with respect to this issue.

### 4.   The ALJ's reliance on the Grids was appropriate.

As a follow-up to his argument that the ALJ failed to consider Plaintiff's mental impairments in assessing the RFC, Plaintiff also contends his nonexertional limitations "prevent him from performing a substantial majority of the jobs within" the light work exertional category – thus, the ALJ erred in relying on the Grids without expert

vocational testimony. *Doc. 15* at 24 (noting that "if the claimant has nonexertional limitations that prevent him from performing a substantial majority of the jobs within a particular exertional category, the Grids may only be used as a framework, and expert vocational testimony is required") (citing *Thompson*, 987 F.2d at 1488). Because the Court found that the ALJ properly considered Plaintiff's non-severe mental impairments in assessing the RFC, this argument also fails.

"The Grids are based on the four relevant factors contained in the Social Security Act: physical ability, age, education, and work experience." *Holden v. Astrue*, No. 11-CV-096-PJC, 2012 WL 1753006, at *11 (N.D. Okla. May 16, 2012). "They provide a 'shortcut' of rules that determine whether jobs exist in significant numbers that a claimant with certain characteristics can perform." *Id.* (citing *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)). "The grids should not be applied conclusively in a particular case . . . unless the claimant could perform the full range of work required of that [RFC] category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." *Thompson*, 987 F.2d at 1488 (citations omitted); *see also Holden*, 2012 WL 1753006, at *2 (citing Soc. Sec. Ruling 83-11, Titles II & XVI: Capability to do Other Work – the Exertionally Based Medical-Vocational Rules Met, 1983 WL 31252, at *2 (Jan. 1, 1983) ("the RFC required for the Grids 'reflects an exertional capability sufficient to allow performance of substantially all of the primary strength activities required in the range of work existing at the specified level'"); *Allen v. Barnhart*, 357 F.3d 1140, 1142-43 (10th Cir. 2004)). "The mere presence of a nonexertional impairment does not

preclude reliance on the grids[,]" the impairment "must interfere with the ability to work." *Thompson*, 987 F.2d at 1488 (citations omitted).

Here, the ALJ determined Plaintiff is able to perform the full range of light work. AR at 21. Plaintiff does not argue in this section of his brief that he cannot physically perform the full range of work required. Plaintiff has advanced no argument that the use of the Grids was improper beyond his contentions that the ALJ failed to consider either the opinions of Dr. Koewler or Dr. Wewerka or Plaintiff's non-severe mental limitations in assessing the RFC. *See Doc. 15* at 24-25. The Court has already ruled against Plaintiff on those issues. In finding that Plaintiff's mental limitations are non-severe and he is capable of performing a full range of light work, the ALJ implicitly found that Plaintiff's mental impairments are not significant. *See Thompson*, 987 F.2d at 1488, (holding that an ALJ may not rely "on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level"). The ALJ's determination that Plaintiff was able to perform the full range of light work was, therefore, appropriate, so the ALJ's "use of the Grids [was] proper, and VE testimony [was] not required." *See Holden*, 2012 WL 1753006, at *2 (citing *Thompson*, 987 F.2d at 1488; *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1989) ("Automatic application of the grids is appropriate only when a claimant's RFC, age, work experience, and education precisely match a grid category") (internal citations omitted)). The Court will deny Plaintiff's motion on this issue.

## V.     Conclusion

The Court finds that the ALJ's analysis was adequate, and substantial evidence supports the ALJ's findings. The Court will deny Plaintiff's motion.

Wherefore**,**

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 15*) is **denied**. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will issue affirming the decision of the Acting Commissioner and dismissing this action with prejudice.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent